## In re LINTNER.

### (District Court, S. D. California.   August 30, 1893.)

#### No. 466.

CHINESE—WARRANT FOR ARREST—EXECUTION OF GEARY ACT—JUDICIAL COGNIZANCE.

A warrant for the arrest of a Chinese person under the act of September 13, 1888, (25 Stat. 476,) will not be refused by a district judge, who has no judicial knowledge that the executive department is without the funds necessary to deport such person under the Geary act of May 5, 1892, (27 Stat. 25.)

Application by William F. Lintner for a warrant for the arrest of Ah Wong, a Chinese person.   Granted.

Willoughby Cole, for applicant.

ROSS, District Judge.   An application has been made to me, as judge of the United States district court for the southern district of California, based upon a complaint to which the applicant asks to be sworn, for the issuance of a warrant for the arrest of one Ah Wong, charged with a violation of the sixth section of the act of congress entitled "An act to prevent the coming of Chinese persons into the United States," approved May 5, 1892, and commonly known as the "Geary Act."   That section of that act was involved in the case of Fong Yue Ting v. U. S., 149 U. S. 698, 13 Sup. Ct. Rep. 1016, and its validity sustained by the supreme court ; and there is also in force, as decided by the district court for this district on the 30th day of June, 1893, in the case of U. S. v. Wong Dep Ken, 57 Fed. Rep. 203, section 13 of an act entitled "An act to prohibit the coming of Chinese laborers to the United States," approved September 13, 1888, (25 Stat. 476,) a part of which section reads as follows:

"That any Chinese person, or person of Chinese descent, found unlawfully in the United States, or its territories, may be arrested upon a warrant issued upon a complaint, under oath, filed by any party on behalf of the United States, by any justice, judge, or commissioner of any United States court, returnable before any justice, judge, or commissioner of a United States court, or before any United States court, and when convicted, upon a hearing, and found and adjudged to be not one lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came.   But any such Chinese person convicted before a commissioner of a United States court may, within ten days from such conviction, appeal to the judge of the district court for the district."

I, therefore, while much regretting that the application has been made to me, feel it my duty, under my oath of office, and in view of the obligations resting upon me to administer the laws of the United States in all cases properly brought before me, to award the warrant, upon a verification of the complaint, in the absence of any judicial knowledge that the department of the government charged with the execution of the provisions of the act of May 5, 1892, is not provided with the means to carry out its provisions.   Were I so advised, I would not hesitate to refuse the warrant, for it is plain that

the executive department of the government cannot execute the orders of the judges directing the deportation of Chinamen who failed to register pursuant to the provisions of section 6 of the act of May 5, 1892, unless congress gives it the money with which to send them away. Without the necessary funds, the executive department would be manifestly powerless; and no judge, in my opinion, should order into custody, for deportation, any Chinaman whom he judicially knows cannot be deported by the executive department, for want of the necessary means. Such a course would not only strongly tend to embarrass the administration, but, it is pertinent to ask, what, in that event, would become of such Chinamen? They could not be put in the penitentiary at hard labor, as provided by section 4 of the Geary act, for the reasons given in the recent opinion of the district court of this district in the case of U. S. v. Wong Dep Ken, and any unreasonable detention of them by the officers would doubtless entitle them to discharge on writs of habeas corpus. In the case last mentioned the defendant was found and adjudged to be unlawfully in the United States, and was therefore ordered deported, and was deported by the executive department; and, nothing to the contrary appearing, it is to be presumed that the same department is possessed of similar means for the deportation of any other Chinaman or Chinamen legally found and adjudged to be unlawfully in this country, and for that reason legally ordered to be deported. For these reasons, upon the proper verification of the complaint, the warrant for the arrest of the person complained of must be issued.